■ JENNIFER RAMIREZ, Respondent, v COLUMBIA PRESBYTERIAN HOSPITAL et al., Defendants, and NASA REAL ESTATE CORP., Appellant. [858 NYS2d 123]—

Order, Supreme Court, New York County (Alice Schlesinger, J.), entered June 11, 2007, which denied the motion of defendant-appellant NASA Real Estate Corp. (NASA) for summary judgment dismissing the complaint and cross claims asserted against it, reversed, on the law, without costs, the motion granted and the complaint dismissed as to NASA. The Clerk is directed to enter judgment accordingly.

In these consolidated actions to recover for personal injuries allegedly caused by exposure to lead paint, it is undisputed that the infant plaintiff, who was born in April 1992, resided in apartment 3E for four months in 1993 and apartment 3B from March 1995 to December 1997, both of which were in a building located at 80 Arden Street in Manhattan (the Arden Building). In his deposition testimony and affidavit in support of NASA's motion for summary judgment, NASA's treasurer and shareholder, Frank Cadeddu, stated that he is a principal and employee of several separate entities that own and manage apartment buildings, including, among others, defendants Arden St. Realty, LLC and NASA. Mr. Cadeddu stated that the Arden Building is owned and managed by Arden St. Realty and that, since its inception around 1976 or 1977, NASA had only owned two buildings, one located in Sunnyside, Queens and another building that it owned for two years during the 1970s. Mr. Cadeddu also stated that around 1995 he used a broker to obtain insurance for various property owning entities, including Arden St. Realty and NASA, and the broker decided to insure all of the entities under one policy issued to NASA, which included coverage for the Arden Building. Mr. Cadeddu emphasized, however, that NASA never owned, operated, managed or controlled the Arden Building.

In denying NASA's motion, the motion court, although stating that it "is an extremely close question," held that NASA had not sustained its burden of showing with absolute certainty that it had no control over the subject premises. However, given that the deed for the Arden Building reflects that it has been owned by Arden St. Realty Co. since September 17, 1981, and Mr. Cadeddu's uncontradicted deposition testimony and affidavit that NASA never owned, operated, managed or controlled it, the mere facts that the Arden Building and other properties

owned by various entities in which Cadeddu and others had an ownership interest were insured under one policy issued to NASA and that the insurance application stated that "All entities are same financial control," are not indicia of NASA's possession or control over the premises and are insufficient to withstand summary judgment (*cf. Smith v Andre*, 43 AD3d 770, 771-772 [2007]). Concur—Andrias, Catterson and McGuire, JJ.

Mazzarelli, J.P., dissents in a memorandum as follows: I would affirm the order appealed because issues of fact exist regarding whether appellant had control over the premises sufficient to confer liability. Two of the four apartments in which the infant plaintiff was allegedly exposed to lead paint were located at 80 Arden Street in Manhattan. It is not disputed that defendant Arden St. Realty is the title owner of that building. Appellant NASA Real Estate Corp. (NASA) is a management company whose principal, Frank Cadeddu, is also a principal of Arden St. Realty. Cadeddu owns or is involved in the management of several other entities which own various buildings. Cadeddu testified at his deposition, and asserted in an affidavit, that NASA never managed the affairs of 80 Arden Street or otherwise controlled its operations. Further, he testified that an insurance broker retained by him to procure insurance for all of the entities in which he was involved, whether through ownership or management, procured a single insurance policy. Cadeddu stated that this policy, which covered several buildings, including 80 Arden Street, named NASA as the insured.

At the time NASA made its motion for summary judgment, it had not yet produced a copy of the insurance policy, despite demand therefor by plaintiffs. Accordingly, the motion court issued an order requiring production by NASA of "a complete copy of its insurance policy." Nevertheless, NASA did not produce the policy itself, but rather some declaration sheets, a schedule of insured locations, some endorsements to the policy and the policy application. The declaration sheets reveal that NASA is the insured under general commercial liability policy number 1021627 issued by First Central Insurance Company. The schedule of "locations of all premises you (NASA) own, rent or occupy" includes 80 Arden Street. Although one of the endorsement pages produced by NASA reflects a change to the policy to add additional named insureds for two of the insured locations, no such endorsement was produced in connection with 80 Arden Street. Indeed, 80 Arden St. Realty is not mentioned at all in the materials produced by NASA, as an additional insured or otherwise. Moreover, the record reveals that by letter to NASA dated February 25, 2004, the State of New

York Insurance Department Liquidation Bureau, which was handling the affairs of First Central, disclaimed coverage in connection with this action because "In so far [sic] as Arden St. Realty, LLC is not named within First Central policy CPP 1021627 as either a Named Insured or as an additional insured, coverage cannot be afforded."

The foregoing facts raise a triable question about whether NASA procured the insurance policy to insulate itself from liability from claims related to 80 Arden Street. Based strictly on the materials produced by NASA, the policy provided it, and no one else, protection in connection with 80 Arden Street. This is sufficient to raise the inference that NASA procured the policy because it was engaged in activity with respect to 80 Arden Street from which liability could arise (see Butler v Rafferty, 100 NY2d 265, 271 n 2 [2003]). Indeed, there is no other reasonable explanation.

Cadeddu's assertion in his affidavit that his broker "decided to insure all the entities under one policy issued to [NASA], which included coverage for the building at 80 Arden Street," does not entitle NASA to summary judgment. There is no explanation in the record as to why Cadeddu would not have purchased insurance on behalf of Arden St. Realty or some other entity with an insurable interest in the property. In fact, without such explanation, the assertion, in light of what the policy materials actually demonstrate, cannot be reconciled with the statement that "[NASA] never owned, operated, managed or controlled this building." Thus, the majority's conclusion that the policy's being in NASA's name "[is] no[ ] indici[um] of NASA's possession or control over the premises," is untenable. Indeed, the only plausible conclusion which can be reached, based strictly on the materials produced by NASA in relation to the policy, is that NASA had some reason to insure itself in connection with 80 Arden Street.

The majority's reference to Smith v Andre (43 AD3d 770 [2007]), is misplaced. In that case, the defendants agreed to temporarily maintain the insurance on property which they had recently sold, until the purchasers could put their own insurance in place. Moreover, the new owners admitted that they owned, managed, controlled and maintained the premises. Here, NASA has offered no plausible explanation for why, if it has no connection to 80 Arden Street, it, and only it, maintained insurance on the building exclusively in its own name. The only evidence in this record that NASA did not control the premises is Cadeddu's conclusory statement that it did not. It has never explained just what its relationship to the premises was. In

light of the questions raised concerning the insurance policy, this unsupported statement is insufficient to establish, as a matter of law, that NASA bears no liability for plaintiff's injuries.